435 A.2d 606

**Martin HAMAY, Appellant,**

v.

**COUNTY OF WASHINGTON.**

Superior Court of Pennsylvania.

Submitted April 16, 1980.

Filed Sept. 25, 1981.

138

Wray G. Zelt, III, Washington, for appellant.

William C. Porter, County Solicitor, Washington, for appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

BROSKY, Judge:

In August of 1978, appellant, Martin Hamay, brought suit against the appellee, Washington County, for an alleged illegal arrest and confinement of him by Washington County. The trial court granted summary judgment in favor of Washington County and Hamay now appeals. Hamay contends that his request for a change in venue was improperly denied and that it was error to grant summary judgment to the appellee and, therefore, that he was wrongly denied relief for the alleged wrongful arrest and confinement. Appellant then argues that because of these improprieties and illegal actions by the court, he may sustain an action against appellee for damages. We disagree with the appellant and affirm the order of the trial court.

The trial court in its opinion succinctly stated the facts:

On February 11, 1975, Martin Hamay was ordered to pay the sum of $250.00 per month for the support and maintenance of his wife. The order specified that upon failure to comply with the provisions of the order, a petition for bench warrant would be presented to the court for his arrest and commitment to jail. Martin Hamay signed this order, stating that he fully understood and accepted the conditions, and acknowledged receipt of a copy.

Hamay made the support payments as required until June of 1977, at which time Hamay terminated his employment as a coal miner, because of an alleged heart condition, reducing his income from about $49.00 a day to $100.00 a week sick benefit. Hamay failed to make the support payments as required by the court's order, nor did he petition the court for a reduction of the order.

In October of 1977, Hamay and his wife, both represented by counsel, met with the domestic relations officer at the Courthouse, but the parties were unable to agree on a modification of the outstanding support order. At that time, the domestic relations officer was aware of Hamay's reduced income, but the status of Hamay's claims for accumulated pension benefits from the United Mine Workers Welfare & Retirement Fund and the Social Security Administration were unknown.

In the latter part of November of 1977, the attorney for Mrs. Hamay presented a petition for rehearing to Judge Sweet, alleging that the defendant, Hamay, had ceased making any payments on the support order, contending that he was disabled, and the prosecutrix was informed that he was now receiving social security disability benefits and a miner's pension. Judge Sweet informed the attorney for the prosecutrix that the petition for rehearing was not the right remedy for nonpayment, that a bench warrant should issue if the defendant was in default, where the defendant might prove inability to pay.

At the request of the attorney for the prosecutrix, the domestic relations officer then presented a petition to Judge Sweet, praying that a bench warrant issue, as the defendant had failed to comply with the support order, and on December 5, 1977, the prayer of the petition was granted and a bench warrant was directed to issue. The clerk of courts issued the bench warrant which was placed in the hands of the sheriff, who arrested the defendant on the morning of December 8, 1977.

*Hamay v. County of Washington*, No. 135, Slip Op. at 4–6 (Court of Common Pleas, August Term, 1978).

The appellant spent the night of December 8, 1977 in jail and was brought before Judge Sweet the next morning. At that hearing, Hamay's attorney challenged the issuance of the bench warrant, the arrest, and the confinement as all being improper and illegal. Judge Sweet then held a hearing at which the court found that it was Hamay's responsibility to seek a reduction in this support order, and that he

was technically in contempt as he had some ability to comply with the support order. Judge Sweet did not, however, order him confined. Additionally, a decision on modifying the support order was deferred until Hamay's claim for disability benefits was determined. This order was not appealed.

In reviewing a venue determination, our role is limited. As the Pennsylvania Supreme Court recently said, "It is clear that an application for change in venue is addressed to the sound discretion of the court, and its exercise of that discretion will not be disturbed by an appellate court in the absence of an abuse of discretion." *Commonwealth v. Tolassi*, 489 Pa. 41, 413 A.2d 1003 (1980).

A change of venue will be made when the judge is personally interested in the question to be determined, or when the county in which such case is pending is a party *and* it appears that local prejudice exists *and* a fair trial cannot be had in such county. 12 P.S. § 111.[1]

Appellant argues that because the trial court judge was a judge in the county sued, and because Judge Sweet is on the same court as the trial court judge, a change in venue should have been granted.[2] However, just because the trial court judge was a judge in the county sued does not necessarily mean that the judge's judicial impartiality was compromised. Additionally, the fact that Judge Sweet is on the same court as the trial judge does not require a finding that the trial judge's impartiality was impaired. Nor need it necessarily be found that local prejudice existed here because the suit was against Washington County.

It is arguable that in some cases allegations similar to these, if proved, may amount to justification for a grant of a change of venue. In the instant case, however, we find no evidence that requires such a change. It was in the discre-

1. 12 P.S. § 111 was in effect at the time of the occurrences in this case. It has since been repealed. 1978, April 28, P.L. 202, No. 53, § 2(a) [657], effective June 27, 1980. Change of venue is now found in 42 Pa.C.S.A. § 5106.

2. Appellant offers no legal authority for his argument.

tion of the trial court to determine if a change in venue was necessary. *Commonwealth v. Tolassi,* supra. Without more than the evidence that is presently before us, it cannot be said that the trial court abused its discretion in the holding that it made. Accordingly, the denial of the request for change in venue is affirmed.

We must decide two other issues regarding this appeal in order to determine if the appellant is to recover. First, we must decide whether the appellant has a respondeat superior cause of action against the county for the actions of Judge Sweet in his official capacity as judge. Secondly, the merits of the case must be decided. We hold that appellant had no right of action against the county in the instant case and, alternatively, the merits of the case are against him.

Initially, we determine whether appellant had a right of action against the appellee. Appellant did not bring an action against the judge himself. Apparently he was aware that the doctrine of judicial immunity bars suit in such a case. *Stump v. Spockman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Albright v. R. J. Reynolds Tobacco Co.,* 463 F.Supp. 1220 (W. D. Pa. 1979). Instead, appellant brought a respondeat superior action against the county based on the actions of the judge, and other county personnel, for his alleged false imprisonment. Appellant's basic contention is that the county is vicariously liable for the alleged wrongful actions taken by Judge Sweet.

We do not agree with the appellant's theory of action against the county is wrong. First, the doctrine of respondeat superior depends on the existence of a relationship of principal and agent, or of master and servant. *Drexel v. Union Prescription Centers, Inc.,* 428 F.Supp. 663 (E.D. Pa. 1977), reversed 582 F.2d 781 (3d Cir. 1978). The trial judge, however, is not an agent or employee of the county. The judge is an employee of the state, an officer of the Commonwealth of Pennsylvania. Additionally, liability under the doctrine respondeat superior is available only because the principal has the right to control the actions of the agent. *Drexel,* supra. When the principal has the right to control

the actions of the agent, it is held that the liability from the agent's actions can be imputed to the principal.

■ In the case of the trial judge and county, however, this relationship does not exist. The county has no power to control the judge's actions. And, without that power to control, imputed liability makes no sense. For the foregoing reasons, we hold that the county cannot be held liable for any alleged tortious actions of the trial judge.

■ As to other county employees (domestic relations officer, sheriff and his deputies, and clerk of courts), we hold that no tort was committed by them. In order for them to have committed a tort in this case, they would have had to have been enforcing orders that were ordered by the judge acting without any jurisdiction at all. 70 Am.Jur.2d, Sheriffs, Police, and Constables, § 110. *Breckwoldt v. Morris*, 149 Pa. 291, 24 A. 300 (1892), P.L.E., Sheriffs and Constables §§ 81, 87. As Judge Sweet was acting pursuant to a valid statute, in effect at the time, it cannot be said that the judge was acting without jurisdiction. Therefore, the county employees cannot be held liable.

■ Alternatively, we address the merits of the case. Appellant contends that he was wrongfully and illegally arrested on December 8, 1977. He seeks money damages. He argues that Section 9 of the Civil Procedural Support Law, 62 P.S. § 2043.39(a),[3] upon which Judge Sweet relied in issuing the bench warrant for Hamay's arrest, cannot be read, standing alone, but rather, a rule to show cause why

---

**3.** 62 P.S. § 2043.39(a) states:

The court, upon receiving information either through written application or at any hearing, that there is failure to comply with the order of the court, may issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named be brought before the court at such time as the court may direct, which in counties of the first class shall be within forty-eight (48) hours or two court working days, whichever is the longer from the time the person is taken in custody of law pursuant to the attachment.

It was in effect at the time of the occurrences in this case. It has since been repealed. 1978, April 28, P.L. 202, No. 53, § 2(a) [1291], effective June 27, 1978.

an attachment should not issue against the defendant, must be read into it. Stated differently, appellant asserts that Section 9 has been interpreted as requiring a hearing for the defendant before he is taken into custody. Appellant relies on the cases of *Crislip v. Harshman*, 243 Pa.Super. 349, 365 A.2d 1260 (1976), and *Kramer v. Kelly*, 265 Pa.Super. 58, 401 A.2d 799 (Super. 1977).

Section 9 of the Civil Procedural Support Law is clear on its face. It allows the court to issue attachment proceedings directing that a person who has failed to comply with an order of the court be brought before the court. It states that such person must be brought before the court within forty-eight hours (or two court working days) of the time the person is taken into custody. The situation in the instant case falls within Section 9. Hamay failed to obey the support order, a bench warrant issued, Hamay was taken into custody, and twenty-four hours later he was brought before the court to determine if he was to be held in contempt. This situation is far different from the one in *Crislip* and *Kramer*. Those cases, rather, deal with the situation of providing procedural safeguards that are required before a person is actually adjudicated in contempt. Thus, *Crislip* and *Kramer* stand for the proposition that a defendant must be provided a hearing before being found in contempt. The simple fact of the matter is that Section 9 specifically authorized, without a hearing, the attachment of the person to initiate a contempt proceeding. We find, also, no authority that anything additional has been read into Section 9.

Whether or not the statute was unconstitutional and whether or not appellant would have had a cause of action against the county if he could have gotten the statute declared unconstitutional by the court below, are questions that need not be addressed by this court. Hamay's attorney, at the hearing before Judge Sweet, challenged the constitutionality of Hamay's appearance there. And, after Judge Sweet held the hearing despite these challenges, Hamay failed to appeal. As such, he is collaterally estopped from

raising those constitutional issues here. Accordingly, the order of the trial court is affirmed.

PRICE, J., did not participate in the consideration or decision of this case.